```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
 2                        ATLANTA DIVISION

 3   MICHAEL BRACKETT                )
                                     )
 4              Plaintiff,           )    CIVIL ACTION FILE
                                     )    NO. 1:09-CV-1927-WSD
 5   v.                              )
                                     )    ATLANTA, GEORGIA
 6   MOONEY CONSTRUCTION, INC.       )
                                     )
 7              Defendant.           )
     _____)

 8

 9                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE WILLIAM S. DUFFEY, JR.,
10                 UNITED STATES DISTRICT JUDGE

11                  Wednesday, January 6, 2010

12

13

14
     APPEARANCES OF COUNSEL:
15
     For the Plaintiff:           CROWLEY CLARIDA & HEAD LLP
16                                (By:  C. Andrew Head)

17   For the Defendant:           WIMBERLY LAWSON STECKEL
                                  SCHNEIDER & STINE
18                                (By:  Raymond Perez)

19

20

21        Proceedings recorded by mechanical stenography
            and computer-aided transcript produced by
22              NICHOLAS A. MARRONE, RMR, CRR
                   1714 U. S. Courthouse
23               75 Spring Street, S.W.
                   Atlanta, GA  30303
24                   (404) 215-1486

25
```

```
 1                    Wednesday Morning Session

 2                       January 6, 2010

 3                         12:01 p.m.

 4                        -- -- --

 5               P R O C E E D I N G S

 6                        -- -- --

 7                    (In chambers:)

 8          THE COURT:  This is a discovery hearing in Brackett

 9   v. Mooney Construction, which is Civil Action No. 09-1927.

10          Mr. Head is here for Mr. Brackett.  Who is

11   Mr. Head, because I don't think we've met?

12          MR. HEAD:  That's me, Your Honor.

13          THE COURT:  And Mr. Perez is here for Mooney.

14          MR. PEREZ:  Yes.

15          THE COURT:  What kind of construction does Mooney

16   do?

17          MR. PEREZ:  They are a construction management

18   company, and they work with various public and private

19   entities in the construction of whatever kind or type

20   projects.  For instance, the project that Mr. Brackett was

21   assigned to was a fire station, for instance, for the

22   Atlanta, Fulton County District.

23          So, you know, they do all kinds of residential,

24   commercial kind or type construction projects.

25          THE COURT:  And what was Mr. Brackett's job with
```

1    them?

2         MR. PEREZ:  He was a managing site

3    superintendent.

4         And essentially the company is broken down amongst

5    I think like six to seven to eight managing site

6    superintendent type employees, and basically they assign that

7    site superintendent to be pretty much the company

8    representative at the construction site.

9         And they are pretty much in control of the complete

10   day-to-day operations of the construction.  So they set the

11   schedules, they help find the subcontractors that perform the

12   actual labor on the project, they work with the owners, the

13   architects, make design changes to the plan, get government

14   permits, do work site safety, all those different things, and

15   coordinates the material, the budgeting, all those types of

16   aspects of the job.

17        THE COURT:  All right.  Let's go back to where we

18   were in December.

19        In December there was I guess some processing of

20   discovery issues.  We had I think a telephone hearing on

21   that.

22        MR. HEAD:  Yes, sir, December 9th.

23        THE COURT:  The result was that I allowed the

24   defendant to serve their responses, and then they were

25   required to produce documents on the 16th.

1            MR. PEREZ:  Correct.

2            THE COURT:  I think the responses were filed on

3    time.

4            MR. PEREZ:  Correct.

5            THE COURT:  But the documents were not produced on

6    time.

7            MR. PEREZ:  No.  I know I had a previous

8    conversation with Mr. Head from the very beginning that, you

9    know, part of the document production -- we had produced in

10   fact a number of documents even before we had filed the

11   written responses to his discovery request, but in our

12   responses we also did mention that there were certain items

13   that would be available at a mutually convenient time for

14   inspection at the office.

15           And I know Mr. Head and I had talked about that

16   previously, that that was something that he would want to

17   avail himself to, especially in light of the fact that the

18   documents he's requesting would, you know, number in the

19   thousands related to employment that, you know, would have

20   lasted seven months in total.

21           THE COURT:  Well, let's step back a second.

22           MR. PEREZ:  Sure.

23           THE COURT:  You understood that the Court ordered

24   you to produce the documents by December 16th?

25           MR. PEREZ:  You know, I did go back and read it,

1    and I did see where it said documents.

2          And I guess I presumed that when you said the

3    interrogatory responses were due on I believe that

4    Wednesday or Friday, I believe, I thought you meant the

5    written responses to the interrogatories.  And when you said

6    to provide the discovery requests for the documents,

7    I thought you meant the written responses to the document

8    request.

9          And that's why, you know, we set it up where we had

10   the written responses to the document production request, and

11   then that's what we had provided.  And in some of those cases

12   we said, you know, that certain documents would be available,

13   you know, for inspection at the office, and then we worked

14   with Mr. Head to set up a date to come by, to actually

15   facilitate that inspection.

16         So there might have been a misunderstanding on my

17   part from what you actually were requiring us to produce at a

18   certain time.

19              THE COURT:  Well, let's see what the docket says.

20              MR. PEREZ:  Sure.

21              THE COURT:  While we are waiting for that, what --

22   so that's now about three and a half weeks ago.  Are all the

23   documents -- have they been produced?

24              MR. PEREZ:  One of the things that came up --

25              THE COURT:  In order so that the record is clear,

1    can you answer that yes or no?

2              MR. PEREZ:  Okay, what was the question again?

3              THE COURT:  Have all of the documents been

4    produced?

5              MR. PEREZ:  No.

6              THE COURT:  All right.  Why is that?

7              MR. PEREZ:  During the mediation from last week, it

8    came to my attention -- and in fact, my client had also,

9    I think in good faith, they just kind of had forgotten that

10   Mr. Brackett had also worked at another project site

11   briefly during the beginning of his employment before he

12   really started to gear up on that fire station that he

13   worked on.  So there were some records -- and Mr. Head has

14   alluded to them -- of another project site that he worked

15   at.

16             And so during the previous production of

17   documents, we did allow -- you know, we presented all the

18   documents related to the fire station that he primarily

19   worked on, but there is a separate fire station that he also

20   worked on briefly at some point during the beginning of his

21   employment that we have not provided documents to.

22             Now, from what I understand from my client, those

23   records don't really possess any relevant information related

24   to Brackett, but certainly to the extent that he worked out

25   there and, you know, certainly to the extent that any of

```
 1    those records may indicate as such, you know, we will
 2    certainly allow them open for inspection.
 3            But in fact, most of the records produced for that
 4    Fire Station 13 that he did work at, some of those records in
 5    his own handwriting denotes times where he went to that other
 6    work site to perform, you know, whatever little daily duties
 7    that he may have done over there also during that time
 8    period.
 9            So there is a discrepancy on this other work site
10    that he may have performed some work on during the early part
11    of his employment.
12            THE COURT:  Let me give you the docket entry and
13    ask you to read the underlined portion, and then tell me why
14    you think that's ambiguous.
15            MR. PEREZ:  Defendant shall produce these documents
16    no later than 10:00 a.m. Wednesday, December the 16th, 2009.
17            And certainly when I did read back through this, I
18    don't believe that it -- it was ambiguous I think in the
19    sense that from our conversation during the mediation or the
20    telephone conference --
21            THE COURT:  Let's stick with the questions I ask.
22            MR. PEREZ:  Sure.
23            THE COURT:  That was the docket entry that was of
24    record in this case --
25            MR. PEREZ:  Yes.
```

```
 1            THE COURT:  -- publicly sent to you as to the
 2   conclusion and what was ordered at the hearing that we held
 3   over the telephone.
 4            Do you agree that you were under court order to
 5   produce documents by 10:00 a.m. on December 16th according to
 6   that docket entry that was sent to you?
 7            MR. PEREZ:  Yes, according to this docket entry,
 8   yes, I would agree with that.
 9            THE COURT:  So by not producing the documents by
10   10:00 on December 16th and as of today not having produced
11   all the responsive materials, do you accept that you are in
12   violation of a court order?
13            MR. PEREZ:  You know, based on those statements,
14   yes.
15            THE COURT:  All right.  Now, what is left to be
16   produced?
17            MR. PEREZ:  Mr. Head did provide us a list of the
18   items that he wanted.
19            For instance, from his first inspection, he had
20   denoted certain ones that he wanted copied, and my client
21   sent them out to a copying company, and they have made those
22   copies and they are available now to be picked up.
23            THE COURT:  When were those flagged as wanting to
24   be copied?
25            MR. PEREZ:  I believe it was December 22nd.
```

1          Was it the 22nd that the inspection --

2          THE COURT:  Why has it taken your client that long

3    to copy and produce documents?

4          MR. PEREZ:  Well, no, I think Mr. Head, when he

5    originally went for that inspection, he had flagged out

6    certain ones and he --

7          THE COURT:  So why weren't those immediately copied

8    for him?

9          MR. PEREZ:  Well, from what I understand when

10   I talked to my client, he had flagged them and had indicated

11   that he wanted us to produce them at the deposition, and that

12   subsequently after the mediation conference, he then

13   contacted me again letting me know some of the additional

14   items that were not available.

15         THE COURT:  And who told you that at your client?

16         MR. PEREZ:  It was a Lisa Bussie.  She's like the

17   secretary that works there, and she was there when Mr. Head

18   was present during the inspection.

19         THE COURT:  So Ms. Bussie represented to you that

20   Mr. Head instructed her that he did not need the documents

21   until the deposition was to be conducted?

22         MR. PEREZ:  That's the information that she

23   provided, that he had --

24         THE COURT:  Is that true, Mr. Head?

25         MR. HEAD:  I don't know if it's true that she

```
 1   provided that information, but I think -- your question is is

 2   that what I told her?

 3              THE COURT:  Is that what you told her?

 4              MR. HEAD:  No, that's not what I told her.  In

 5   fact, I was very --

 6              THE COURT:  Just tell me what you told her.

 7              MR. HEAD:  Okay.  The only thing I told her was --

 8   I asked her two questions.  Are these the only documents

 9   being produced?  And she said, Yes, they are.

10              And I said, Where is the construction log book for

11   Fire Station 18?  She said, I didn't know you wanted that.

12              I was very uncomfortable talking to his client.  He

13   wasn't present; they wouldn't let him be present.  And that's

14   it.  I flagged documents and left.

15              THE COURT:  Your client wouldn't let you be present

16   at the production?

17              MR. PEREZ:  Correct.

18              THE COURT:  Is the reason why they are trying to

19   save money?

20              MR. PEREZ:  I believe that that's part of the

21   problem, Your Honor.  And that's kind of why we are where we

22   are at today.

23              And I think I have finally gotten my client on

24   track, but certainly from the very onset of this case, they

25   were very I guess frustrated with the process.  They wanted
```

```
 1    this thing to be done and taken care of from the very

 2    beginning, and it took me a while to get them to understand

 3    the seriousness of this nature -- the seriousness of

 4    complying with the discovery orders, the seriousness of

 5    producing the documents in a timely matter.

 6              And from the original inspection, they didn't want

 7    me present, and again I believe it was because of a cost

 8    saving.  They are like, Well, we didn't want you there.

 9              And I told them -- and it's through e-mail

10    correspondence -- I said, It's highly advised that I am there

11    so that I can facilitate this process in case any issues come

12    up.  And they said, No, we don't want you there.

13              THE COURT:  All right.  When will all of the

14    documents be produced?

15              MR. PEREZ:  From what I understand -- I talked to

16    my client today.  They went through the list that Mr. Head

17    provided --

18              THE COURT:  You have to speak today on behalf of

19    your client.

20              MR. PEREZ:  Okay.

21              THE COURT:  I want you to tell me as a

22    representative of your client -- because I'm afraid that what

23    you say is, I understand from my client, and then you will

24    call back and say, Well, my understanding was wrong.

25              We are going to reach some finality on some things
```

1    today.  So when will the documents be produced?

2            MR. PEREZ:  The documents are available today for

3    inspection, and Mr. Head has the opportunity to go and flag

4    out any additional ones he wants.  He can either have them

5    copied or we can have them copied for him.

6            There is only one item that remains not at the main

7    office to be reviewed that Mr. Head has specified, which is

8    that green book which relates to Fire Station No. 18.

9            THE COURT:  And where is that?

10           MR. PEREZ:  And that's a book that's maintained on

11   the actual construction site.  And again, just based on the

12   way the --

13           THE COURT:  And where is the construction site?

14           MR. PEREZ:  You know, I don't know the exact

15   location, but it's not near the main office in

16   Woodstock.  Like I did ask them, Well, is it close by where

17   you can --

18           THE COURT:  I don't need to hear -- let's just cut

19   to the chase.  You will produce all documents and you will

20   arrange to have those that are flagged copied, and those will

21   be in Mr. Head's hands -- well, the production will be made

22   no later than noon tomorrow, and the copies will be provided

23   no later than Friday morning at 9:00.

24           MR. PEREZ:  Okay.  Copies --

25           THE COURT:  And your client will be responsible for

1    having available by noon tomorrow this book that you have

2    just described.

3            So your client is being ordered, one, to produce

4    every document that remains to be produced no later than

5    noon tomorrow, and those that are designated for copying will

6    be delivered to Mr. Head no later than 9:00 on Friday

7    morning.

8            And if that is not met, your client will be

9    sanctioned.

10           MR. PEREZ:  Okay.

11           THE COURT:  Are there any other outstanding

12   document issues?

13           MR. HEAD:  Yes, Your Honor.  Just as to documents,

14   we have got objection issues, requests to --

15           THE COURT:  We will talk about those in a second.

16           MR. HEAD:  Okay.

17           THE COURT:  As far as what has agreed to be

18   produced and the timely production, is there anything else?

19           MR. HEAD:  A couple points.  One would be that we

20   currently had three depositions in a row for today, tomorrow

21   and Friday.

22           THE COURT:  I'm not to depositions.  I'm just

23   talking about documents.

24           MR. HEAD:  Well, the reason I brought that up is

25   because I would like before the plaintiff is deposed to

1    have the opportunity to review --

2         THE COURT:  You need to also just answer my

3    questions.  With respect to the documents that are going to

4    be made available or that you have already copied, are there

5    any other issues now that you have a deadline for receiving

6    that which is agreed to be produced?

7         MR. HEAD:  Two issues, Your Honor.  One would be

8    logistics of the copying, which is my vendor or theirs.  And

9    then two is --

10        THE COURT:  I've told -- you need to listen too.

11   I told him that he's responsible for delivering to you copies

12   by 9:00 on Friday morning.  I don't care how he does

13   that.  If he wants to call and ask you to arrange for it,

14   that's fine; he will just have to pay for it.  But I suspect

15   it would probably be cheaper for him to find somebody to copy

16   them and give them to them.

17        But that's your responsibility.

18        MR. PEREZ:  Okay.

19        MR. HEAD:  Okay.  To answer your question, then,

20   Your Honor, as to the documents that he has said we will make

21   available and that we are not objecting to, I don't know that

22   there are any other issues based on what you ordered unless

23   and until of course I see what they did.

24        THE COURT:  All right.  The remaining issue on the

25   timely production of documents that were required to be

```
 1    produced and are being produced is that the defendant is in

 2    violation of the Court's September order by not making the

 3    production in a timely manner and specifically in not making

 4    the production by 10:00 on December 16th.

 5            So I'm going to give the plaintiff an opportunity

 6    to submit a pleading showing with respect to the documents

 7    that were agreed to be produced any fees and expenses they

 8    incurred to get the defendant's compliance, and then I will

 9    consider whether it's reasonable to require the defendant to

10    reimburse them their fees.

11            I think that covers the issues about the discovery

12    of documents that were agreed to be produced.  The next is

13    the scope of the requests.

14            I assume this pertains to document requests; is

15    that right?

16            MR. HEAD:  Yes, Your Honor.

17            THE COURT:  So does anybody have a copy of the

18    document requests and the objections that were asserted?

19            MR. HEAD:  Yes, Your Honor.

20            There is two ways -- I think, and I will leave it

21    up to you, but I think the easiest way to look at it is I

22    made bullet-point summaries --

23            THE COURT:  I'm -- just let me see the discovery

24    itself.

25            MR. HEAD:  Here is defendant's responses to
```

1    plaintiff's request for production.

2              THE COURT:  Does this have the request as well?

3              MR. HEAD:  Yes, it cites them in front of each.

4              THE COURT:  So I'm looking at a December 16th cover

5    letter sent by Mr. Perez to Mr. Head, attached to which are

6    Defendant Mooney Construction, Inc.'s Response to Plaintiff's

7    First Requests for Production.

8              So let's go to page two.

9              Do you have a copy of that, Mr. Perez?

10             MR. PEREZ:  I do.

11             THE COURT:  Let's go to page two.  The first

12   request is set forth at the top of page two.  Are there any

13   concerns about the response to the first request?

14             Well, first, are you withholding anything,

15   Mr. Perez, that is responsive to the first request based upon

16   your objections?

17             MR. PEREZ:  No.

18             THE COURT:  All right.  So you are representing to

19   me that the defendant is going to make a full and complete

20   production, is not relying upon anybody objections to Request

21   No. 1; is that right?

22             MR. PEREZ:  That is correct, Your Honor.

23             THE COURT:  All right.  Mr. Head, that seems to

24   resolve Request No. 1.  Do you agree?

25             MR. HEAD:  I agree.

 1          THE COURT:  Let's go then to Request No. 2.  This

 2    is a request to produce documents -- I guess what the

 3    plaintiff is requesting, that they get a production by

 4    groupings, so any documents that support a specific defense

 5    be identified as being a document that is in support of a

 6    defense and that that be done for all defenses.  Is that

 7    correct?

 8          MR. HEAD:  That is correct, that's what we are

 9    requesting.

10          THE COURT:  All right.  That's an improper

11    request.

12          A document production under Rule 34 is required to

13    be made in two ways, one is either by category or as they are

14    maintained in the ordinary course of business.

15          This imposes a production requirement that is not

16    attendant to Rule 34, and therefore I am not going to require

17    a production to Request No. 2 based upon the manner in which

18    the plaintiff has required it to be made.

19          Next then is Request No. 3, produce all documents

20    regarding the defendant's corporate structure, i.e.,

21    reporting structure, organizational chart, throughout the

22    relevant period.

23          And the relevant period is defined as what?

24          MR. HEAD:  During --

25          THE COURT:  Is that a defined term in your

1    request?

2            MR. HEAD:  Yes, it's a defined term in this

3    request.

4            THE COURT:  Do you understand that there is a

5    defined term for the relevant period, Mr. Perez?

6            MR. PEREZ:  Yes.

7            THE COURT:  All right.  So since you agree that

8    there is a defined period, has the defendant withheld any

9    documents that are responsive to Request No. 3?

10           MR. PEREZ:  No.  My client does not possess

11   documents that are responsive to that request.

12           THE COURT:  All right.  They can only produce what

13   they have.  The representation to me is that there isn't --

14   that there aren't any responsive documents, meaning that they

15   have complied.

16           MR. HEAD:  Right.  And for clarification, for these

17   questions, I take it what you are asking is not have you

18   withheld to this point, but are you withholding up till

19   tomorrow's date?

20           THE COURT:  Right.

21           MR. HEAD:  Okay.

22           THE COURT:  What I'm saying is there is going to be

23   a production that's required to be made by noon tomorrow, and

24   I just want to make sure that when I say are you going to

25   produce materials responsive to these requests, what I'm

1   saying is have you already done it or are you going to do it

2   by noon tomorrow.

3           MR. PEREZ:  Yes.

4           MR. HEAD:  Okay.

5           THE COURT:  And if any of these requests, Mr. Head,

6   you are not concerned about, tell me that and I will just

7   skip those.

8           MR. HEAD:  Okay.

9           THE COURT:  All right.  So the next would be four,

10  produce all documents regarding defendant's incorporation,

11  election or appointment of officers and/or directors, and

12  corporate ownership.

13          Are there any documents being withheld based upon

14  objections to this request?

15          MR. PEREZ:  Yes, Your Honor.

16          THE COURT:  And what is that?

17          MR. PEREZ:  The basis of our objection is the fact

18  that these requested materials are immaterial and irrelevant

19  and premature and not likely to lead to the admissible

20  evidence in this case.

21          THE COURT:  How are these relevant to a wage

22  dispute?

23          MR. HEAD:  Well, Your Honor, you need to know who

24  is the owner and who controls policy for good faith --

25          THE COURT:  Why?

1          MR. HEAD:  -- for their good faith knowledge.

2          Here a potential scenario.

3          THE COURT:  Well, what does that have to do with

4    the process for the -- I mean, this says produce all

5    documents regarding, among other things, how they elect and

6    appoint officers.  It doesn't really -- that's not relevant

7    to this case.  Their process for doing that seems to me to be

8    irrelevant.

9          To the extent that you are asking to identify

10   people who during the relevant period were officers and

11   directors --

12         MR. HEAD:  Exactly.

13         THE COURT:  -- which is not what this request is,

14   it goes far beyond that -- I think you are entitled to know

15   that.

16         Of course, there is publicly-available information

17   at the Secretary of State's website that would identify some

18   of those people.  But it would seem to me reasonable for the

19   defendant to produce for the relevant period who the officers

20   and directors of the corporation were to the extent that

21   that's in a document.  If it's not in a document, you have no

22   requirement to create a document to produce it.

23         All right.  So does that satisfy what you really

24   want in response to Request 4?

25         MR. HEAD:  Other than identifying the owner, that

1   would be it.  I mean, they are --

2          THE COURT:  It's a corporation; right?

3          MR. HEAD:  It's a privately-held company.

4          THE COURT:  It's a corporation, though.

5          MR. HEAD:  Yes, it's a corporation.  Their

6   corporate disclosure says that there is only one -- as far as

7   I could tell, there is only one owner.  I just need a

8   document that tells me that.

9          THE COURT:  What kind of corporation is it?  Is it

10  a C Corp or an S Corp?

11         MR. PEREZ:  You know, I'm not sure, Your Honor.

12         THE COURT:  Well, would you agree to provide him

13  who the shareholders of the company are?

14         MR. PEREZ:  Sure.  If we have that information, we

15  will provide that.

16         THE COURT:  Well, somebody is going to have that

17  information considering they are required to hold shareholder

18  meetings.

19         MR. PEREZ:  Okay.

20         THE COURT:  And you will provide him that

21  information by noon tomorrow.

22         MR. PEREZ:  Yes, Your Honor.

23         MR. HEAD:  Okay.  Five I think we can skip because

24  he says there is nothing else.

25         THE COURT:  Okay.  Six?

```
1              MR. HEAD:  Six I believe we can skip because he

2    says none exist.

3              THE COURT:  Okay, seven?

4              MR. HEAD:  I will go ahead and answer that I really

5    can't tell from the response whether there is something there

6    to be produced.  It seems to be saying there is nothing, but

7    we will make it available.

8              THE COURT:  This essentially asks for any documents

9    that reflect any person's claim that they were entitled to

10   overtime pay.

11             MR. HEAD:  As to Request No. 7, on December 31st

12   Mr. Perez told me --

13             THE COURT:  Well, let me ask Mr. Perez.

14             MR. HEAD:  -- we will confirm.

15             THE COURT:  Are there any written documents that

16   would evidence complaints that people had about their

17   overtime compensation not being paid?

18             MR. PEREZ:  No, Your Honor.

19             THE COURT:  All right.  So if there are none,

20   I'm assuming that's -- that is to me representation that a

21   production will be made, but in this case there is nothing to

22   produce.

23             MR. PEREZ:  Correct.

24             THE COURT:  All right.  Paragraph 8, produce each

25   document regarding or related to the decision to deny
```

1    plaintiff the overtime requested in plaintiff's complaint

2    through the present.

3             Are there any documents relating to any requests

4    that the plaintiff made for overtime compensation?

5             MR. PEREZ:  No, Your Honor.

6             THE COURT:  So there are no documents responsive to

7    this request.

8             Paragraph 9.  Are these or will these documents be

9    produced by tomorrow at noon?

10            MR. PEREZ:  Yes, Your Honor.  Most of these

11   documents have been produced or provided for inspection, and

12   certainly if there is -- Mr. Head has had an opportunity to

13   review them and they have been produced.

14            THE COURT:  All right.  So with respect to Request

15   No. 9, a complete production will be made no later than

16   tomorrow at noon, and it could be that a complete production

17   has already been made.  But if not, it will be made tomorrow

18   by noon.

19            All right.  Next is produce every e-mail sent

20   regarding plaintiff using defendant's e-mail system or sent

21   by any member of defendant's management from any other e-mail

22   system during his employment with defendant.

23            I'm not sure I understand what that is asking.

24            MR. HEAD:  Every e-mail that the plaintiff sent or

25   every e-mail that someone at defendant sent about the

1  plaintiff.  That's usually where you find out --

2         THE COURT:  So if somebody sent an e-mail that said

3  the plaintiff would like for everybody to go to lunch on

4  Thursday, you are demanding that that be produced?

5         MR. HEAD:  Believe it or not, Your Honor, before

6  you blow up that idea, that would be a perfect example of

7  something related to hours worked.

8         In these wage-and-hour cases, what we have is we

9  have plaintiff's testimony and the records of what he noted

10 as his hours worked, and often what you find is, you know,

11 there is very few -- I think there is only one or maybe two

12 people that are going to send any e-mails about the

13 plaintiff, and they will be saying plaintiff just repaired

14 so-and-so on the job site, plaintiff is responsible for

15 fixing the railings at the Fire Station 13.

16        That's the kind of thing you are looking for,

17 because it tells you what the plaintiff was actually doing as

18 his job duties rather than what was announced at the

19 beginning of what they --

20        THE COURT:  Well, what's the defendant's position

21 in the case, that he's not qualified for -- that he's exempt

22 from overtime?

23        MR. PEREZ:  Correct, that he was either an

24 executive, administrative or professional exempt employee.

25        THE COURT:  So are you contesting -- is the

1    defendant contesting that he worked overtime?

2              MR. PEREZ:  No, no, Your Honor.  But we do contest

3    the number of hours worked on a daily and weekly basis.

4              THE COURT:  Well, you need to narrow this.  I mean,

5    there are obviously going to be e-mails in there that don't

6    relate to -- if he sent an e-mail saying, Here is my mother's

7    number, can you give her a call --

8              MR. HEAD:  I understand where you are going,

9    Your Honor.  The problem I've had with that is when the

10   defendant is the one who decides -- let say it's narrowed to

11   something related to his job duties or work performed, when

12   the defendant is the one that looks through the e-mails and

13   decides I think this relates to his job duties or work

14   performed, I don't get a chance to make that review.

15             THE COURT:  Well, you never do.  I mean, that's the

16   process of discovery is that a lawyer representing the client

17   is the one that has the responsibility --

18             MR. HEAD:  Sometimes we get to do a keyword search.

19             THE COURT:  Well, what are the keywords that you

20   would like searched?

21             MR. HEAD:  First of all, I think it's clear that

22   any e-mail from his direct supervisor is not going to be so

23   broad as to be a problem.  It's a small -- a real small

24   company.  We're not -- this is not a Coca-Cola case.

25                  I mean, if Mr. Perez would help me out, I don't

1    believe there is more than one or two managers that would be

2    sending any e-mails about the plaintiff here.

3             MR. PEREZ:  And he is correct.

4             In fact, just so we clarify, I mean, we are not

5    really objecting necessarily to e-mails related to

6    Mr. Brackett's employment there.  In fact, Mr. Brackett did

7    not have an e-mail account with the company.  He did not have

8    a computer that I know of that was at the site.  So it's not

9    like he was regularly sending e-mails back and forth.

10            And e-mails that were being sent in relation to his

11   project have been printed out and are available for

12   inspection and were available previously as related to that

13   project that he was working on.

14            MR. HEAD:  But a good example, if the City of

15   Atlanta or the architect or someone on the project sends an

16   e-mail to the plaintiff and so-and-so that's asking for a

17   status report of what's happening and they respond and the

18   plaintiff is copied on that that says here is everything that

19   has been done on the site --

20            THE COURT:  But the plaintiff is not going to be

21   copied because he doesn't have a computer.

22            MR. HEAD:  Well, he actually has been copied on

23   some of those e-mails, Your Honor.  And I understand that

24   when you hear that, you think there is not any e-mails.

25            THE COURT:  Well, does he have it?  Did he ever get

1     work e-mails?

2              MR. HEAD:  He had a *Yahoo.com* account, and

3     occasionally he was copied on those.  I can pull those from

4     the *Yahoo!* account.

5              THE COURT:  So he can get all those.  I mean, those

6     are within your control.

7              MR. HEAD:  To the extent he hasn't deleted any of

8     them, he can get his.  I always want to get those from the

9     other side in case he's deleted some.

10             But what I can't get are ones between other people

11    about him, saying Mike Brackett is responsible for doing

12    this, Mike Brackett is going to have to work until 10:00 p.m.

13    tomorrow, those kind of things.

14             So this is such a small company and so few people

15    involved in the e-mail that this is a different request than

16    what I would make if I was asking the executive VP at

17    Coca-Cola for all their e-mails.

18             THE COURT:  Do you have a server?  Does the company

19    have a server?

20             MR. PEREZ:  I'm not sure, Your Honor.

21             THE COURT:  Have you looked into how hard it would

22    be just to produce all the e-mails to the extent that they

23    still exist?

24             You want all the e-mails sent by what people

25    specifically?

```
 1              MR. HEAD:  His project manager.

 2              THE COURT:  Who is that?

 3              MR. HEAD:  Jerry Lyons.

 4              THE COURT:  Who else?

 5              MR. HEAD:  I think Timothy Mooney.  And there is

 6     one other management individual, Kevin.

 7              THE COURT:  Kevin what?

 8              MR. HEAD:  And I'm sorry, do you recall Kevin's

 9     last name?

10              MR. PEREZ:  I do not.

11              MR. HEAD:  Kiker?  I'm not sure.  I only know from

12     his -- I am recalling what his e-mail address is, and it's

13     Kevin something.

14              But basically, you know, if you said that the

15     management employees who would be responsible for

16     communicating with the plaintiff about his work on those two

17     job sites, that would be --

18              THE COURT:  Well, he should know that.  Who are the

19     management employees that communicated with him with respect

20     to his job?

21              MR. HEAD:  I think it's those three that

22     communicated with him.  I don't know internally whether

23     anyone else communicated about him.  But I would -- if you

24     were to provide that, that would be fine with me.

25              THE COURT:  All right.  Would you then produce any
```

1    e-mails to or from or to which the plaintiff was copied from

2    or to Mr. Lyons, Mr. Mooney and Mr. Kiker; that is, go

3    through whatever storage they have of e-mails, and any e-mail

4    that mentions or refers to the plaintiff, produce that.

5              MR. PEREZ:  We can do that, Your Honor.

6              THE COURT:  Okay.  And I think that might take some

7    more time.  I'm going to give you until Friday morning to

8    make copies of those and produce them.  They don't have to

9    actually be made available tomorrow at noon.

10             MR. PEREZ:  Thank you, Your Honor.

11             THE COURT:  That gives you another day or so to get

12   that together.

13             MR. PEREZ:  And just to clarify, Your Honor,

14   though, just so we have it straight, you know, defendant

15   obviously still maintains its client/attorney privilege in

16   relation to any e-mails that were sent --

17             THE COURT:  You are not required to produce --

18   if there is attorney-client privileged material or work

19   product material about this litigation, you are not required

20   to produce that, and I don't think Mr. Head is requesting

21   that.

22             MR. PEREZ:  Okay.

23             MR. HEAD:  That's correct.

24             THE COURT:  All right.  Eleven?

25             MR. HEAD:  I think we can skip on -- well, I'm

1    sorry, eleven is grouped in with some of the earlier

2    ones.  Eleven is an important one.

3          Eleven is one of many having to do with job duties

4    performed and hours worked.  So I'm sorry, go ahead.

5          THE COURT:  So these would just be any records that

6    would show when he went to the work site or to the

7    defendant's offices?

8          MR. HEAD:  Uh-huh.  Well, in a wage-and-hour case,

9    you look for a couple things, and it's not present in this

10   case as far as I know, but I need to ask.

11         Sometimes you have to key in and key out of a

12   building or you have to pass a security gate that logs in the

13   time you were there.   That's Subsection No. 1.

14         Subsection No. 2 is you look for, okay, any

15   time-stamped communication with somebody about the work you

16   are doing.  That could be sent e-mails by the plaintiff, that

17   could be faxes that the plaintiff sent.  Those kind of things

18   tell you if he's sending a fax at 8:00 p.m., he is probably

19   working at 8:00 p.m.

20         And number three, same thing, if there is some sort

21   of log-in or clock-in that shows when he used their

22   computers.

23         Now, one thing that would be present is their cell

24   phone records, times that he used the company cell phone.

25   That shows you, okay, when is he on the phone working.

1      That's what this request --

2              THE COURT:  Well, that would show when is he on the

3      phone.

4              MR. HEAD:  Sure.

5              THE COURT:  It wouldn't show when he's on the phone

6      working.

7              MR. HEAD:  Maybe, Your Honor.  I don't think these

8      two were friends, so I don't think they were talking, you

9      know, about soccer games.

10             But, yes, Your Honor, that's what this request is

11     looking for.  Any sort of time-stamped document that says

12     when he's communicating, and from that the parties can make

13     their arguments.

14             THE COURT:  Well, did he have a company phone or

15     did he have his own phone?

16             MR. HEAD:  He had a company-assigned cell phone,

17     and I believe that the -- they made some cell phone -- they

18     made cell phone records available.  It's my understanding

19     that those covered his cell phone number, but I haven't been

20     able to bring them yet to my client to --

21             THE COURT:  If there is any check-in, check-out

22     system where a document is available showing when he came or

23     left a work site or the defendant's facilities, you should

24     produce that.  My guess is that doesn't exist.

25             MR. HEAD:  Yeah, it's a locked gate.  It's a locked

gate on a construction site.  He worked out at the site,

so --

THE COURT:  Then the other thing that would make

any sense would be cell phone records.  I would submit that

they are going to be useless because -- but to the extent

that there are cell phone records for the relevant time

period showing calls made to or from the defendant's --

I mean, the plaintiff's phone, you need to produce those.

MR. PEREZ:  Certainly.  We've already made a copy

of them and they are available for production.

THE COURT:  And I think the only issue is whether

there is evidence of his phone usage, because it's his phone

usage which would indicate whether he's on or off the

job.  So I don't think it makes any sense to require some

other -- the records for somebody else's phone, because he

either got a call or he didn't get a call.

MR. HEAD:  Yes, it's his communications with

defendant, so it would have to be his phone.

THE COURT:  And then used or accessed defendant's

computer -- documents indicating that he used or accessed

defendant's computer or telephone system during his

employment.  Well, you are going to get the phone records, so

I guess that's their telephone system.

But I think you said all he has is a *Yahoo!*

account, so how would we --

```
 1            MR. HEAD:  I don't believe that he has a computer

 2    that he accessed or used their computer system.  But I asked

 3    just to make sure I'm not wrong on that.

 4            THE COURT:  Well, assuming that he doesn't have,

 5    there is no log-in system or something, no record if he

 6    doesn't have a computer.

 7            Check into that, if he did have a computer and

 8    there is some record showing when he logged off or logged

 9    on.

10            MR. PEREZ:  I will confirm that with my client,

11    Your Honor.

12            THE COURT:  All right.  You should produce that by

13    tomorrow, but it sounds to me like that doesn't exist

14    either.

15            MR. HEAD:  Twelve and thirteen, nobody has

16    identified any experts.

17            THE COURT:  Okay.

18            MR. HEAD:  We would be surprised if that happens,

19    but I think we can move on from those.

20            THE COURT:  Fourteen, if there are no experts,

21    there is nothing reviewed.

22            MR. HEAD:  Right.

23            THE COURT:  Fifteen, have the documents described

24    in 15, have they been produced?

25            MR. PEREZ:  Yes, Your Honor, except to the extent
```

that we were discussing that he did perform some work at that other site.

Now, from my -- we do not believe that those records possess any records showing hours worked or his time out on this other facility.  But certainly to the extent that he worked on this other site, we will and we are going to make those documents available for inspection.

THE COURT:  By noon tomorrow.

MR. PEREZ:  By noon tomorrow, yes.

THE COURT:  All right, got it, okay.

MR. HEAD:  Your Honor, as to payments to the plaintiff, all I have received and all I understand I'm going to be receiving is a three-page summary of payments.  I don't have pay stubs or anything that might reflect here is the number of hours this payment is for.  That might be important.

And then secondly, there was a bonus payment that affects his regular rate for overtime calculation purposes.  All I have again is that three-page summary of here is what was paid, but I don't have any documents with that bonus or the check.

THE COURT:  Who does your payroll?  Do they do it inside or does ADT or some other company do it?

MR. HEAD:  It's a third-party company.

MR. PEREZ:  It is a third-party company.

1          MR. HEAD:  I'm sorry, he can answer.

2          MR. PEREZ:  This is the document that he's

3    referring to, and this again was originally produced back on

4    November 3rd, 2009.

5          THE COURT:  Well, I think you have got to go to

6    whoever this is, Time Plus Payroll, go back to them and just

7    have them pull all the records about payment made to him and

8    anything relating to this pay and how it was -- what's in

9    their system to show what he was being paid for.

10         MR. HEAD:  As to -- there is one bonus issue,

11   Your Honor, six hundred dollar bonus in December of '08.  I

12   don't know whether that check came as it sometimes does with

13   a memorandum or some note from the president that says

14   attached is your bonus for a great job done.

15         THE COURT:  Well, it seems awful inconsequential if

16   it's only six hundred dollars.  But is there any dispute that

17   he was paid a six hundred dollar bonus?

18         MR. PEREZ:  I think the only dispute would be that

19   it wouldn't -- that compensation was a discretionary bonus

20   payment and therefore it's not part of -- I mean, it's not

21   part of the compensation that would be factored into overtime

22   determination.  That would be the only issue.

23         THE COURT:  Well, you are going to need testimony

24   on that.

25         MR. PEREZ:  Correct.

 1          THE COURT:  Unless there is some document

 2  characterizing the reason why the bonus was paid.

 3          MR. PEREZ:  Okay.

 4          MR. HEAD:  If there is some document that came with

 5  the bonus, that's what I would be asking to see, that

 6  explains --

 7          THE COURT:  Well, what document does your client

 8  say came with the bonus?

 9          MR. HEAD:  He doesn't recall a document, but I

10  don't -- my client, Your Honor, is a -- is a -- well, let me

11  put it this way.  I think it's often prudent to ask the

12  defendant whether they sent any document that said here is

13  what the bonus was for.  I can just rely on my client's

14  recollection, but I would like to see the defendant confirm

15  my client's recollection.  What if my client is wrong?

16          THE COURT:  What does your client say it was for?

17  He has no idea?  It's just kind of --

18          MR. HEAD:  No, he says it's for working hard this

19  year.

20          But if what you are asking is what does my client

21  say came with this bonus payment, he doesn't recall it coming

22  with a note as you sometimes get from an employer that says

23  here is your bonus which is a bonus for X reason.  But

24  I asked for it because I want to make sure.

25          THE COURT:  Okay.  Well, if that exists, you should

1    produce it by noon tomorrow.

2              MR. PEREZ:  I will look into that, Your Honor.

3              THE COURT:  All right.  What's next?  Personnel

4    file, has that been produced?

5              MR. PEREZ:  Yes, Your Honor.  The personnel file

6    for the plaintiff has been produced.

7              THE COURT:  What else is the plaintiff looking for

8    there?

9              MR. HEAD:  I didn't get a chance to tell you that

10   I think 16 is covered.

11             THE COURT:  Sorry, okay.  Seventeen.

12             MR. HEAD:  Seventeen we do have a dispute about.

13             THE COURT:  Well, I'm not going to do that.  Why do

14   you think you are entitled to the personnel files for these

15   people?

16             MR. HEAD:  Well, first of all, they are witnesses

17   that are listed on Attachment A, and so to the extent that

18   those documents contain impeachment materials, that's one

19   thing you look for.

20             THE COURT:  Like what?

21             MR. HEAD:  Like Jerry Lyons is probably going to

22   tell me one thing about what his prior experience was, but

23   his application for employment might say another.

24             THE COURT:  Okay.  So you want their applications

25   for employment?

1          MR. HEAD:  Job application.

2          And also if there is anything in the personnel

3    files -- I doubt we are going to find it here, but sometimes

4    you find someone being disciplined for allowing someone to

5    work overtime or for not paying someone for working

6    overtime.  There is something in their personnel file where

7    somebody above them is saying, You need to change the way you

8    are handling these employees and their overtime.

9          THE COURT:  Okay.

10         MR. HEAD:  And sometimes you find a disciplinary

11   notice in there.

12         That's why for each witness they identify, I ask to

13   see their personnel file.  I really don't -- other than that,

14   I really don't care about what elections they made for direct

15   deposit.

16         THE COURT:  Well, of course, that's what you

17   requested.

18         So you don't have to produce the personnel files,

19   but you should for these specific individuals produce their

20   applications for employment, if there are any, and any

21   notations in there where they were disciplined, counseled,

22   criticized, or talked to about whether they were allowing

23   people to work overtime when they shouldn't have.

24         MR. PEREZ:  Certainly to the extent those documents

25   exist, we can have them produced by tomorrow.

1          THE COURT:  Okay.  Is that satisfactory to the

2     plaintiff?

3          MR. HEAD:  Yes, Your Honor.

4          I just want to make sure we are all on the same

5     page.  There were some people identified two days ago in

6     supplement to Attachment A.  So my request would cover them.

7          THE COURT:  It's whoever was initially or

8     thereafter identified as a person who should have been on

9     Attachment A.  Do you understand that, Mr. Perez?

10          MR. PEREZ:  Yes, Your Honor.

11          THE COURT:  Okay.  How about eighteen?

12          MR. HEAD:  Eighteen we have a dispute

13     about.  Eighteen is saying, okay, now not for the

14     plaintiff, but for the other people who did the same job

15     as the plaintiff, produce the documents that relate to

16     their hours worked and the job duties they actually

17     performed and then how you paid them, did you pay them

18     overtime or not.

19          THE COURT:  Well, were there any other site

20     superintendents that were paid overtime?

21          MR. PEREZ:  No, Your Honor.

22          THE COURT:  So if they are taking the position,

23     which I would think they are, that they are all exempt

24     employees and they don't pay them overtime -- I guess you

25     ought to go through the other site superintendent files and

1    if you find that any of them were paid overtime, you ought to

2    produce those.

3            MR. PEREZ:  We can do that, Your Honor.

4            MR. HEAD:  And then next as to job duties, this

5    will go to the good faith defense that they have raised,

6    which is of course their defense to liquidated damages.  And

7    I will probably see an argument that says -- or I might see

8    an argument that says, Well, we didn't know that the

9    plaintiff actually did all this construction labor, or

10   actually that the plaintiff had no involvement in creating

11   the schedules, et cetera.

12           But when you find -- when you obtain in discovery

13   the fact that that's the same thing for every site

14   superintendent, and there is only I think maybe it's between

15   six and eight site superintendents, when you are able to show

16   that that's the way they did things with every site

17   superintendent, that helps me prove to you -- it just went

18   out of my head whether you decide good faith or the jury, one

19   decides willful and one decides good faith -- prove to the

20   fact-finder on good faith that you can on the one hand be

21   saying, Well, we had no idea that you actually had no

22   involvement in these management type things and that you did

23   a ton of construction work when in fact you show that

24   everyone had the same thing and there is no way an employer

25   couldn't know that all of their site superintendents were

1    doing this.

2          So that's why you ask for it.  I've got the cases

3    that say that -- that have granted the motions to compel for

4    the plaintiff to get it, if you are interested in that?  But

5    that's what you are going for.

6          THE COURT:  I don't understand what you are looking

7    for.

8          MR. HEAD:  Okay, I will give an example.  There are

9    these construction logs.  They call them green books or daily

10   logs, but that's where the company's sole laborer out there

11   on the site, which is the site superintendent, is marking

12   down what happened that day.  And sometimes they will say, I

13   had to replace the safety railings, I had to redo and dig the

14   grading because the subcontractor messed up the grading, and

15   they will list in there, Here is what I'm actually doing out

16   there day in and day out.

17         And if I later on in this case when we are

18   arguing about their good faith defense I get an argument

19   from them that says, Okay, you are right, if he's

20   non-exempt because he's actually doing all this

21   construction work and that he actually didn't have the

22   authorization to make these decisions and he had to

23   instead get someone else to make them, I need the evidence

24   at that point to say, And you knew from all the documents

25   that you had that all of your other site superintendents were

```
 1    doing the exact same thing, so don't tell the Court he's an
 2    anomaly and we had no idea.
 3              THE COURT:  So are you saying you want the green
 4    books from every project they have ever had?
 5              MR. HEAD:  It can be just during the
 6    period.  I mean, that's what I asked for, at any time during
 7    the relevant period.
 8              But they are a small company.  There is only six or
 9    eight site superintendents.  And his relevant period, he's
10    only employed from June to December 2008.
11              THE COURT:  He's only employed there six months?
12              MR. HEAD:  Seven months, yeah, through the end of
13    the year.
14              THE COURT:  This is an overtime claim for seven
15    months?
16              MR. HEAD:  Yes, Your Honor.
17              I have got a whole speech prepared about how this
18    case, if the defendant would have looked at its documents and
19    not have played around like this, this case should have been
20    resolved back when I sent the demand in September.  It's a
21    small case.
22              THE COURT:  What is your speech if it's found that
23    there is no case to have been brought?  Then couldn't
24    somebody say the case should never have been brought
25    because --
```

```
1            MR. HEAD:  Then this Court would be ruling
2     differently than a number of district courts in this circuit
3     who have ruled on this exact situation.
4            THE COURT:  Well, only if you are right.
5            MR. HEAD:  Correct, Your Honor, I believe I'm
6     right.  I believe -- I mean, a case that should be brought
7     because it's right under the law and it's right under
8     established decisions should be brought.  At that point it's
9     the defendant's obligation --
10           THE COURT:  What do you mean by established
11    decisions that you are talking about?
12           MR. HEAD:  Gotlieb its progeny.
13           THE COURT:  Well, with all due respect, I have two
14    hundred civil cases.  The wage-and-hour cases I have probably
15    number ten.  So I would like to say that I know Gotlieb, but
16    I don't.
17           MR. HEAD:  Right.  I was going to tell you bullet
18    points real quick.  Gotlieb is on all fours with these
19    facts except that my client actually did more construction
20    labor.
21           What you haven't heard is that there are no
22    employees of the company other than the plaintiff out at the
23    job site every day.  He's the worker.  So executive exemption
24    is out; he's not supervising any employees.
25           What you haven't heard is that he doesn't make the
```

decisions.  He can't make decisions.  Someone else sets the
schedule; it's the owner/architect.

   *Gotlieb* went through all this and said when you are
a general contractor who has one guy out there --

   THE COURT:  This is a district court case?

   MR. HEAD:  I'm sorry, it's a federal district court
case.  It was a bench trial after denying summary judgment,
and the judge ruled --

   THE COURT:  Who was the judge?

   MR. HEAD:  I will pull the decision for you right
here.

   Judge Graham down in the Southern District of
Florida back in 2006.  The first thing he did was denied
summary judgment, and then he held a bench trial.  Then
Judge Graham went through extensive findings of fact and
conclusions of law, which are helpful because usually you
don't get that from a jury verdict.

   And he said what you have here is you have a
general contractor who has one laborer out there on the site;
the guy never goes to the office, he only goes to the job
site; his job is to be out there from start to end, and if
the subcontractors show up, then he's keeping an eye on what
they are doing, and he's responsible for certain labor there,
clean up, moving things around.

   When the subcontractors don't do their job right,

1   his job is either to get them to come back and fix it or he

2   does the work himself.  When the subcontractor doesn't show,

3   he does the work himself.

4         And what *Gotlieb* said is in this situation, this --

5   somebody else sets the entire project schedule.  A project

6   manager sets the entire project schedule, and someone else,

7   the project manager and the owner, make the contracts with

8   the subcontractors and provide him with the list of approved

9   contractors.

10        So at this point you are the guy on the site, you

11  have got a list of you can only use these subcontractors for

12  this job, and you have got a schedule that says you need the

13  grading subcontractor for this two-week period.  You look at

14  this and you look at that and you tell them to be on the

15  site.

16        The problem I have in this case and why I'm sitting

17  here in your chambers in January rather than here on some

18  sort of motion regarding settlement is that it wasn't until

19  December 23rd that defendant let its counsel look at its

20  records of the construction logs where my client was

21  writing down here is what I did and here is the hours that

22  I worked.

23        Up until that point, up until December 23rd, what

24  I'm hearing from counsel is, We don't have any records of his

25  hours worked, we don't believe he worked those hours

1   worked.

2          Now I think defendant's counsel would agree that

3   the only records that the defendant have shows in-and-out

4   times for my client on the job sites and supports my client's

5   calculation.  But until December 23rd, I never received an

6   offer from the plaintiff.

7          We're now finally at a point where at least

8   defendant knows that its records support plaintiff's hours.

9   We are not at the point where we have reached a settlement

10  that we should have reached back in September that says this

11  is a small case, it's a total of thirty-nine thousand

12  dollars, it's a single plaintiff.  Our records, the

13  defendant's records, support his calculations.

14         THE COURT:  Well, you haven't reached a settlement,

15  because the report I got was it wasn't resolved.  So we are

16  going to trial.

17         MR. PEREZ:  Correct.

18         MR. HEAD:  That's correct.

19         MR. PEREZ:  Could I clarify just so -- there were a

20  couple issues that were brought up.  One, we did not --

21         THE COURT:  I'm really not --

22         MR. PEREZ:  Oh, I'm sorry.

23         THE COURT:  All I want to do is get the case

24  discovered so that we can try it.

25         How many -- so you want these green books for the

1   other projects during the relevant period?

2              MR. HEAD:  Yes.

3              THE COURT:  Produce those.  I'm going to give you

4   until -- how thick are green books?

5              MR. PEREZ:  They can be a couple -- you know, an

6   inch or two thick.

7              THE COURT:  Well, however you want to do that,

8   either make them available, but if you just want to copy

9   them, so long as you produce the copies by 9:00 on Friday,

10  that's fine with me.

11             All right.  Next, we are on 19 now, any Department

12  of Labor investigations or documents from them about

13  overtime.  You say there weren't any documents.  I assume

14  your production is complete because you didn't have anything

15  to produce?

16             MR. PEREZ:  Correct.

17             THE COURT:  All right.  Twenty is not a proper

18  request, so I'm not going to require you to do that.  This is

19  discovery; it's not trial preparation.

20             Next is 21.  Have you or are you going to produce

21  these insurance policies?

22             MR. PEREZ:  No, defendant does not possess

23  responsive records to that request.

24             THE COURT:  All right.  So that production is not

25  an issue.

1          Twenty-two, it seems an awful lot like stuff that

2     would be in a personnel file.

3          MR. HEAD:  Sometimes they keep a separate

4     unemployment file.  That's why you have (a), they don't keep

5     it in the personnel file.

6          (b) should be in the personnel file, but sometimes

7     the supervisor keeps a separate file.  And I've run into them

8     saying, Well, it wasn't in his --

9          THE COURT:  Their response is that they are going

10    to make this production.  So any additional documents that

11    are required to be made have to be produced by tomorrow at

12    noon.

13         MR. PEREZ:  We will do that.

14         MR. HEAD:  Twenty-three, I don't think -- he says

15    there is no documents.

16         THE COURT:  Okay.  Twenty-four?

17         MR. HEAD:  Twenty-four is asking for the personnel

18    files and the related documents for the site

19    superintendents.  That's something we were just addressing.

20         If I could narrow this to one issue, I heard

21    Mr. Perez continue to make the professional exemption

22    argument.  So what you do is you have to show not only that

23    the plaintiff wasn't required to have a contractor's license

24    or any real license in order to have this job, but that the

25    other site superintendents were not as well.

```
 1              So I would want to see their applications and
 2     anything that says, Here is -- I have a high school diploma
 3     and I don't have any contractor's license.  That kind of
 4     information is relevant.
 5              THE COURT:  Why would that not be in the
 6     application for employment?
 7              MR. HEAD:  It would.  I think what you ruled before
 8     was only as to the witnesses that he had listed, but you
 9     didn't order -- this one is asking for the site
10     superintendents.
11              THE COURT:  So you want for the site
12     superintendents their applications for employment?
13              MR. HEAD:  Job applications.
14              THE COURT:  All right.  Produce those.
15              MR. PEREZ:  We will do that.
16              MR. HEAD:  Or anything relating to certification or
17     anything -- the basis of a professional exemption.
18              THE COURT:  Well, I don't know what that means.  So
19     to the extent that they have applied for licenses or there is
20     any information about licenses or certifications they have,
21     you should produce that.
22              MR. PEREZ:  We can do that, Your Honor.
23              THE COURT:  What else?  Will that do it?
24              MR. HEAD:  To the extent that they had any time
25     records.
```

1        Again, sometimes you get the defendant saying,

2   I didn't know that my site superintendents were working this

3   number of hours.  If the site superintendents were telling

4   them in their own records, I'm out there twelve hours a day,

5   I would like to see that.

6        You have ordered them to produce the green

7   book.  That's where it's most likely recorded.  I don't know

8   that they recorded it -- they might have recorded it on their

9   daily logs, which is something separate.

10       But I think if you narrowed it to any documents

11  related to hours worked by the site superintendents, that

12  would get me where I need to be.

13       MR. PEREZ:  And I guess our only concern,

14  Your Honor, is just that even though there are only a certain

15  number of site superintendents, I mean, each project can

16  contain dozens of boxes that may relate to their project, and

17  it's somewhat time consuming and duplicative for them to have

18  to go through all these records and try to determine, Well,

19  you know, where did -- maybe the superintendent scribbled

20  down some hours here or there.  Other than perhaps the green

21  book which we have already agreed that we will produce, I

22  mean, there are thousands of documents --

23       THE COURT:  Well, go back -- what he's talking

24  about is were they aware that they were paying them for

25  periods of time longer than the regular work hours.

1          So go to your -- I guess go through their personnel

2   files and see if there are any records showing the hours that

3   they actually worked which I guess would show that they were

4   on notice that they were working more than eight hours a day,

5   and go to the payroll people and see if they have any records

6   showing what hours they worked within their pay system.

7          MR. PEREZ:  And the way the pay system was set up,

8   you know, they were paid on a salary, all the employees, so

9   there would not be a record of hours --

10         THE COURT:  So I want you to go back and -- you

11  never know what they have.  So go back and just see if they

12  have any record of the actual hours claimed to have been

13  worked.

14         And in saying that, Mr. Head, that gets you the

15  comparison that you need.  Would you agree with that?

16         MR. HEAD:  Okay.  Twenty-five, I believe he said

17  there is no documents responsive.

18         THE COURT:  Okay.  So you are satisfied with what I

19  have ordered in response to 24?

20         MR. HEAD:  I'm sorry, yes, Your Honor.

21         THE COURT:  Okay.  And 25, what's the relevance of

22  25?

23         MR. HEAD:  Sometimes what you would get -- let me

24  use the fire station example.  The City of Atlanta has a

25  compliance office.  Mooney is the general contractor.  They

1    have a subcontractor.  Let's say it's a grading subcontractor

2    that is out there to do grading work.

3         The grading subcontractor doesn't do his job as

4    required, and the plaintiff has to do the manual labor.

5    Let's say two days in a row, the plaintiff finishes up the

6    grading job.

7         Mooney will then sometimes present a bill to the

8    subcontractor, it's called a charge-back, and it will say,

9    Hey, my guys had to do the labor that you were supposed to

10   do, so you owe me back three thousand off of your contract

11   fee.

12        That would be an example of some document presented

13   by the defendant to another person that relates to the

14   plaintiff's work that is saying here is the work.

15        THE COURT:  Well, maybe not.

16        I mean, I don't mind you asking -- I mean, that is

17   a little far-fetched to me, that you would get a charge-back

18   document that -- because you are saying, Well, because he was

19   there, it must relate to this plaintiff's work, so we get all

20   of those.  I think you have to be more specific about what

21   you want.

22        If there are documents that say, The reason why we

23   are doing this is because the management of the project by

24   the site superintendent caused us to incur additional

25   expenses or whatever it might say, but -- because this

1    request as you have just described it would mean all

2    communications relating to the project would relate to the

3    plaintiff because it was his project.

4           MR. HEAD:  That's not what I'm looking for and not

5    what --

6           THE COURT:  I didn't think so, but that's what you

7    said.

8           MR. HEAD:  I understand.

9           THE COURT:  So --

10          MR. HEAD:  Should we try to tackle this -- this is

11   also covered in a later one that speaks specifically about

12   charge-backs, although I think I call them fall-backs.

13          THE COURT:  I'm just trying to get you to

14   articulate proper requests, and I'm giving you an enormous

15   amount of time to do something which frankly you should have

16   done yourself.  But we are going to get this done today

17   because the case is going to move forward.

18          So what is it -- and you have got to do a better

19   job than you just did as far as what you are asking for in

20   25.

21          MR. HEAD:  Okay.  If there is anything that the

22   document gave to another employee or a contractor relating to

23   plaintiff's job duties performed for the defendant.

24          THE COURT:  So there would have to be a reference

25   about how the plaintiff did his job --

1          MR. HEAD:  The plaintiff had to do X.

2          THE COURT:  -- or something that he was supposed to

3    do and didn't do?

4          So if there are any documents that discuss -- that

5    was given to an employee or to a contractor that mentions or

6    refers to the plaintiff and the performance of his duties,

7    whether good or bad, you should produce that.

8          MR. PEREZ:  We can do that, Your Honor.

9          THE COURT:  All right.

10          MR. HEAD:  I don't think we have any dispute about

11   26, which is --

12          THE COURT:  All right.

13          MR. HEAD:  -- policy manuals.

14          And No. 27, I don't believe that there are any

15   documents.

16          THE COURT:  Okay.  What's the next one in dispute?

17          MR. HEAD:  No. 28 is documents relating to the

18   other benefits paid to or available to defendant's employees

19   in the same or similar position.  What you are looking for

20   there is kind of their leave policies.

21          In exemption cases, you often lose the salary

22   deduction because you are telling people, If you, you know,

23   miss a half a day, I'm going to deduct your salary.  And that

24   often comes up in leave communications, leave

25   documents.  That's basically what I'm looking for.

 1          THE COURT:  You probably have already done this,

 2     but you have already said you are going to make those

 3     available?

 4          MR. PEREZ:  Correct, Your Honor.  If there are any

 5     policies that relate to that, certainly they are available

 6     for inspection.

 7          THE COURT:  Well, no, see, he wants you to go

 8     through all the files and look for every single scrap of

 9     paper where somebody might have written a note that relates

10     to this, which is why this is too broad.

11          MR. HEAD:  Where you will see this is --

12          THE COURT:  The problem I'm having with the way

13     that you approach this is you are saying, Here is the sort of

14     thing that might be out there, but here is what your request

15     is:  Produce all documents reflecting benefits, including but

16     not limited to health, welfare, pension, disability, vacation

17     and sick leave, that are available to defendant's employees

18     in the same or similar position which plaintiff worked for

19     defendant, including all costs for such benefits and whether

20     paid by you or paid by the employee.

21          So this -- so, first of all, I guess this would

22     have to be something that is maybe accessed by the

23     defendant's employees, so communications between the company

24     and its insurer, those would not be required to be

25     accessed.

1          So if there are any documents that an employee can

2     go to in a library or in a manual that reflects their

3     benefits, what they get paid, then you should produce those,

4     which you have agreed to produce them.  You probably read

5     this more carefully than I did.

6          So there is no dispute about that now that it's

7     qualified by only those things that are available to

8     employees.

9          And I'm reading that to mean available to all the

10    employees as opposed to something that might be uniquely

11    available to the president of the company that is not

12    generally available to the work force.

13         All right.  Twenty-nine, you have agreed to make

14    those available.  So to the extent that there are any, they

15    have to be produced no later than 12:00 tomorrow.

16         I guess there are no documents relating to

17    petitions or complaints.  Let's make sure that's an accurate

18    representation, that no documents exist, and therefore your

19    production is complete.

20         MR. HEAD:  Thirty-one I think we have already

21    covered by talking about e-mails where you narrowed it to

22    e-mails relating to plaintiff's job duties or work performed

23    and hours worked, that kind of thing.

24         THE COURT:  Thirty-two -- all right, there is no

25    responsive documents, so that's not an issue.

1          Thirty-three?

2          MR. HEAD:  Thirty-three is a catchall.

3          THE COURT:  I don't think that's a proper request

4     anyway, even as a catchall.  But they say that there aren't

5     any additional documents other than those they have already

6     produced or will produce, so that's not an issue.

7          There are no responsive documents to 34.

8          Let's go to 35.  They agreed to produce those.

9          So what's the next one in contention?

10          MR. HEAD:  Okay.

11          THE COURT:  35, 36, 37, they said they either don't

12     have it or they are producing.  Where is the next dispute?

13          MR. HEAD:  Looks like 38.

14          Okay, in 38 I say -- first of all, Your Honor, in

15     their initial disclosures, defendant is saying, We are owed

16     our fees and costs in this case.  I frankly disagree with

17     that, and the Fair Labor Standards Act has a prevailing

18     plaintiff attorneys' fee statute.  But that said, they have

19     made that claim.

20          So what 38 says is -- it's both an offensive and

21     defensive request.  It says give me your fee agreement and

22     your invoices --

23          THE COURT:  I think I decide this anyway, don't I?

24     I think I decide the question of attorneys' fees?  Isn't that

25     right?

1          MR. HEAD:  You do.  And here is where I get

2     burned.  You decide that after the close of discovery and

3     after whatever judgment is issued.

4          THE COURT:  Right.

5          MR. HEAD:  And what I have had happened is I say,

6     Okay, they are now contesting the reasonableness of my hours

7     that I spent on these crazy discovery disputes, and I say, I

8     would like to see their records, because they will show that

9     we put all these documents into a discovery dispute and their

10    hours are fifty hours and my hours are fifty hours.

11         The court -- sometimes the court will say to me,

12    Well, you didn't ask for them in discovery, and discovery is

13    closed, so you don't get them.

14         THE COURT:  The defendants attorneys' fees

15    records?

16         MR. HEAD:  Right.

17         THE COURT:  Even when they wouldn't be entitled to

18    attorneys' fees?  Are you saying that some court has said

19    that you are entitled to opposing counsel's attorneys' fees

20    to determine reasonableness of the expenses?

21         MR. HEAD:  Yes, Your Honor.

22         In fact, the Eleventh Circuit in the *Henson* case in

23    1985 said so, and then Judge Carnes in 2007 said so.  Because

24    what --

25         THE COURT:  Let me see those.

```
 1              MR. HEAD:  Sure.

 2              I'm going to find and highlight where Judge Carnes

 3    was covering it here.

 4              THE COURT:  Well, this is the circuit saying that

 5    it could be.  This happened to be a ten-year case.

 6              MR. HEAD:  Here is a 2007 one that's citing a

 7    '97 --

 8              THE COURT:  Well, this is the one I'm bound by, the

 9    Eleventh Circuit.

10              MR. HEAD:  Right.  I'm sorry, Your Honor.

11              THE COURT:  This is Judge Carnes --

12              MR. HEAD:  I was saying Judge Carnes was citing a

13    '97 Eleventh Circuit decision that was compelling discovery

14    on the plaintiff's fee agreement.

15              THE COURT:  Well, I'm not saying that there might

16    not be an occasional case where that's appropriate, but it

17    seems to me that why do that now?  We can decide the

18    attorneys' fees issue, and if you need additional information

19    at a later date --

20              MR. HEAD:  The best resolution then would be just

21    to say, okay, I made the request.  We will postpone until

22    unless and until I'm entitled to fees.

23              THE COURT:  I will deal with what you guys need if

24    we ever get to that part, and we will give you the time to do

25    that.
```

```
 1            MR. HEAD:  But I have seen some district court
 2   decisions saying because you didn't ask for it in discovery,
 3   you can't ask for it now at the postjudgment stage.  So
 4   I just don't want to be caught in that situation.
 5            All right.  So 38 we will defer.
 6            You asked what else we still have an objection
 7   on.  Looks like 39, these are the back-charges I was talking
 8   about before.  I called it back-charges unfortunately.  I
 9   don't think there is any confusion what I was asking for.
10            There was actually one submitted to the City of
11   Atlanta on one of these projects, but it was not for work
12   that the plaintiff performed; it was work performed by the
13   site superintendent after him.
14            But it's relevant to show that, number one,
15   defendant knows that its site superintendents are doing the
16   actual construction labor and, even worse, defendant is
17   requiring the subcontractor to pay them.
18            THE COURT:  If on these two projects there were
19   other back-charge submissions evidencing work by site
20   superintendents, you should produce those.
21            MR. PEREZ:  On those two projects, on the two
22   projects that plaintiff Brackett had worked on?
23            THE COURT:  Yeah, but even if he wasn't the one
24   responsible for it, if some other site superintendent did the
25   work, I want those produced as well.
```

1        Does that do it?

2        MR. HEAD:  Your Honor, I hear your ruling.  I don't

3   know of any reason that it would be limited to the project,

4   because it goes to defendant's knowledge of what its site

5   superintendents --

6        THE COURT:  So you want them to do it for every

7   project for half a decade?

8        MR. HEAD:  It would be very easy.  All you have to

9   do is ask the defendant, Which back-charges did you make?  I

10  mean, they keep those.  They had to submit them in a

11  proceeding with the compliance officer, so you submit a --

12  basically you are coming before this compliance officer, you

13  are the general contractor, you have got the subcontractor

14  there, and you are asking the compliance officer to sign off

15  on your back-charge.

16       THE COURT:  All right.  Could you see if any of

17  those exist for projects from January 1st, 2008, to the

18  present?

19       MR. HEAD:  Forty, I have heard counsel say that

20  they will be producing the green books for the two sites.

21       THE COURT:  Right.  So that's not in dispute

22  anymore?

23       MR. HEAD:  Right, except for that we also

24  haven't received the daily logs, but I haven't heard any

25  objection to the daily logs for the other site as well.

1               There is two things, there is the green book and

2      there is daily logs.

3               THE COURT:  All right.  You are going to produce

4      the daily logs?

5               MR. PEREZ:  Yes, Your Honor.

6               THE COURT:  All right.  Next?

7               MR. HEAD:  Forty-one, we haven't gotten them yet,

8      but I believe that they are producing them.

9               THE COURT:  You are producing those, the owner and

10     architect's schedule for these two job sites?

11              MR. PEREZ:  Yes, Your Honor.

12              MR. HEAD:  I don't think there is any objection to

13     producing 42, 43.

14              As to 44, it just looks like we have got some

15     confusion between counsel, because counsel is telling me

16     these are in the files that I have already reviewed, and the

17     files I reviewed didn't have stop-work notices.  But it's

18     easily resolved if the defendant says we will produce

19     stop-work notices.

20              MR. PEREZ:  I did advise my client of that issue,

21     and they said that it should have been in the file, and they

22     are going to go back to ensure it.  If it's not there, they

23     will make sure they find them.

24              THE COURT:  All right.  Forty-five?

25              MR. HEAD:  I don't think you have any objection to

1    producing those, Attachment C, do you?

2              MR. PEREZ:  No, no objection.

3              THE COURT:  And 46, they are going to produce those

4    too.

5              MR. HEAD:  Okay.

6              THE COURT:  Who are the people that you want to

7    depose, Mr. Head?

8              MR. HEAD:  I have asked to depose Jerry Lyons, he's

9    the project manager, and then Timothy Mooney, who from what I

10   can tell from the corporate disclosures is the sole owner and

11   sole corporate officer.

12             THE COURT:  Okay.  Who else?

13             MR. HEAD:  And then they have just identified two

14   days ago a current employee named Billy Humphreys, but I

15   haven't yet received his contact information to attempt to

16   talk to him to see what he has to say.  I usually like to try

17   and talk to a witness --

18             THE COURT:  Who else?

19             MR. HEAD:  They have --

20             THE COURT:  You say he's a current employee?

21             MR. HEAD:  He's a current employee, but I don't

22   think they are claiming that he's management.

23             MR. PEREZ:  No.

24             MR. HEAD:  And then as for depositions, I would

25   prefer to stop at that.  It's a small case.  There are other

1   folks they have identified, but that's all --

2          THE COURT:  And who do you want to depose?

3          MR. PEREZ:  Just plaintiff Brackett.

4          THE COURT:  Okay.  You want to depose -- so what

5   was the order that you had before for the witnesses?

6          MR. HEAD:  We were supposed to have Lyons today,

7   plaintiff tomorrow, Mooney on Friday.

8          There is an asterisk next to Mooney because, as

9   alluded to yesterday, the defendant has objections to

10  Mooney's deposition.  But that was the order.

11         THE COURT:  So when is Mr. Lyons available?

12         MR. PEREZ:  He said at the earliest by Friday.

13         THE COURT:  What does by Friday mean?

14         MR. PEREZ:  I mean he will be available Friday.

15         THE COURT:  Okay.  He gets deposed on Friday.

16         MR. HEAD:  Your Honor, if I could, I really would

17  like the opportunity to receive and review the documents with

18  my client before deposing Lyons if we are going to extend the

19  time?

20         THE COURT:  All right.  Depose Lyons next

21  Wednesday, depose the plaintiff on Thursday, depose

22  Mr. Mooney on Friday, and Mr. Humphreys on Monday.

23         MR. PEREZ:  And can defendant make an argument of

24  Mr. Mooney's deposition or --

25         THE COURT:  If he's the sole owner, no, he gets

1    deposed.

2              MR. PEREZ:  Okay.

3              THE COURT:  But I mean, I will be available all

4    those days.  If you think that the deposition is becoming

5    abusive, stop it, call me, and I will hear what has been

6    covered, and I will determine whether or not it was abusive

7    or not.

8              MR. PEREZ:  Okay.  And just so that I confirm,

9    Mr. Lyons will be deposed next Wednesday, Mr. Brackett will

10   be deposed next Thursday, Mr. Mooney Friday, and then the

11   following Monday Mr. Humphreys?

12             THE COURT:  Right.

13             Okay.  Anything else?

14             MR. HEAD:  Send us back to mediation Monday or

15   Tuesday next week.

16             THE COURT:  I have done that already.  I'm not

17   going to waste Judge Baverman's time anymore.

18             MR. HEAD:  Okay.

19             THE COURT:  What else?

20             MR. HEAD:  You had mentioned an extension of the

21   discovery period.  Do we want to stick with that or do you

22   want --

23             THE COURT:  Well, I mean, I think I have

24   effectively extended it if you are not going to get finished

25   until the following -- a week from Monday.

1           MR. HEAD:  You had announced the 22nd.  I don't
2      know if we want to set a different date now?
3           THE COURT:  Well, I think it makes more sense to
4      get you pinned down, because I don't have a lot of confidence
5      of you working things out amongst yourselves.
6           So this is all the discovery I understand that you
7      want, so if we have nailed these times down, whatever that --
8      what is that?  That's the 18th anyway.
9           So I mean, if there is -- something happens,
10     somebody gets sick or we have to go beyond that, I will
11     consider that.  But I would like -- this is the order that
12     you want, it gives you enough time to review the documents
13     that you want, it gets the case -- you get an extension
14     effectively by agreeing to these dates.  But if we have to
15     adjust it a little bit, so long as people stay in this order,
16     I guess I would allow a few more days.  But we have got to
17     get it over with.
18          Now, Mr. Perez, what's happened in the last two
19     cases we have had is that there has been a Pyrrhic victory by
20     the plaintiff and the defendant finds out that there is a big
21     attorneys' fees award, and you have just incurred some more
22     attorneys' fees.
23          MR. PEREZ:  That's correct.
24          THE COURT:  And your client needs to know, I mean,
25     two ways.  One is he's now going to have to pay for some

1    amount of money because he wasn't -- because he thought that

2    he could save some money.  He's obviously not saving money by

3    his conduct.

4              MR. PEREZ:  Correct.

5              THE COURT:  And second, that the more that's

6    invested in a low-amount case, if they believe they have a

7    strong principle they need to advocate, the risk of course is

8    even if they win -- well, if they don't win, in this case

9    they are going to have to pay maybe some small amount of

10   money but probably big attorneys' fees.

11             MR. PEREZ:  Correct.

12             THE COURT:  Or bigger than they want to pay.  So

13   they are just going to have to make some business decisions.

14             MR. PEREZ:  I will say, Your Honor, that we did

15   submit a Rule 68 offer for the amount of money, back wages

16   that we feel that the plaintiff would be entitled to even

17   based on his own hours of work that he's recorded, and one

18   of the main sticking points between both parties resolving

19   this issue is the proper method of calculation for that

20   overtime.

21             We contend that the proper remedial measures since

22   he was paid a salary is that that salary compensated for all

23   hours worked, and therefore you derive the regular rate by

24   dividing that total compensation by the total amount of hours

25   that he worked in a week, which means we have already --

1        THE COURT:  I don't need -- they have rejected

2    that.

3        MR. PEREZ:  They rejected it, and so their amount

4    comes out to about five times greater than the amount that we

5    believe is legally entitled to him.

6        So we believe we made a fair offer based on the

7    actual legal principles that were decided, they have rejected

8    that offer, and we have issued a Rule 68 based on that number

9    to end, you know, the accumulation of attorneys' fees going

10   forward.

11       And that is a legal issue that we would like to

12   bring to your attention at a summary judgment type motion

13   also to see if perhaps at that stage, if you make a ruling on

14   that decision, we would be able to settle this case I feel

15   one way or the other.

16       THE COURT:  I don't know and I don't want to know

17   what the offers are, but how far apart are you?

18       MR. PEREZ:  Significant.  As I mentioned before,

19   it's about a five times difference when they don't give us

20   credit for that, the straight time we've already paid.

21       THE COURT:  It's only a seven-month employment.

22       MR. PEREZ:  Correct.  His total earnings there were

23   about $33,000, and they are asking for $39,000 in overtime.

24       Based on our proper calculation, even using his

25   number of hours and liquidating, comes out to be roughly

1      about $7,500.

2              THE COURT:  All right.  So --

3              MR. HEAD:  I don't think you want to --

4              THE COURT:  I am done with it.  You know, I'm done

5      with it.

6              Anything else we need to cover?

7              MR. HEAD:  The plaintiff respectfully disagrees

8      with the summary of the settlement to date.

9              THE COURT:  What I was asking is when you went to

10     Judge Baverman, how many dollars were you apart?

11             MR. PEREZ:  Oh, I think our final number was --

12             THE COURT:  I don't want to know your number.  Just

13     what's the difference?  What was the gap?

14             MR. HEAD:  Could I be heard?

15             MR. PEREZ:  It was like thirty, forty thousand, I

16     guess.  Well, maybe thirty thousand.

17             MR. HEAD:  The gap we have, number one, is

18     defendant would like to cap and not pay the attorneys' fees

19     incurred up to this point.

20             THE COURT:  I just want to know what the gap is.

21     I don't want to know how the gap is created.  But if it's a

22     thirty thousand dollar gap --

23             MR. PEREZ:  I think it was about thirty thousand.

24             THE COURT:  -- the case will be tried.  I look

25     forward to doing it.

1          MR. PEREZ:  And we look forward to helping you

2     learn more about FSLA and overtime issues.

3          THE COURT:  I'm going to keep this discovery just

4     so I have it in my file.

5          MR. PEREZ:  Oh, Your Honor, just to confirm and

6     then just to let you know, certainly I have got my client on

7     board with this discovery process, and I am going to be

8     available to show up to their office today certainly, if

9     Mr. Head is available to conduct that inspection this

10    afternoon.  And I will be able to oversee that process to

11    ensure that everything gets done according to the schedule,

12    and for tomorrow and Friday as well.

13          THE COURT:  Great.

14          MR. PEREZ:  Thank you so much, Your Honor, for

15    helping us with this matter.

16          THE COURT:  You are welcome.

17               (Proceedings adjourn at 1:21 p.m.)

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3     UNITED STATES OF AMERICA        :
                                       :
4     NORTHERN DISTRICT OF GEORGIA     :

5

6              I, Nicholas A. Marrone, RMR, CRR, Official Court

      Reporter of the United States District Court for the Northern

7     District of Georgia, do hereby certify that the foregoing 71

8     pages constitute a true transcript of proceedings had before

9     the said Court, held in the city of Atlanta, Georgia, in the

10    matter therein stated.

11             In testimony whereof, I hereunto set my hand on

12    this, the 7th day of January, 2010.

13

14

15

16                            /s/ Nicholas A. Marrone

17    _____

18                            NICHOLAS A. MARRONE, RMR, CRR
                              Registered Merit Reporter
                              Certified Realtime Reporter
19                            Official Court Reporter
                              Northern District of Georgia

20

21

22

23

24

25